# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| EMILY ROBERTS, *et. al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 2:08-cv-04167-NKL |
| ) | |
| THE SOURCE FOR PUBLIC DATA, *et. al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |

## O R D E R

Plaintiffs Emily Roberts and Sarah E. Smith ("Roberts") bring this putative class action under the federal Driver's Privacy Protection Act, ("DPPA") 18 U.S.C. §§ 2721, *et. seq.*, and the Missouri Merchandising Practices Act ("MPA"), Mo. Rev. Stat. § 407.020, against individual defendants who are officers, directors, employees and/or agents of the Missouri Department of Revenue; and Shadowsoft and The Source for Public Data (collectively, "Defendants"). Roberts claims the Department of Revenue disclosed the putative class members' personal information to Shadowsoft in violation of the DPPA. Shadowsoft then sold the database to PublicData who then made the information available online.

Before the Court is Roberts's Motion for Class Certification [Doc. # 129]. Defendants oppose this motion, arguing Roberts has failed to satisfy the requirements of Fed. R. Civ. P. 23. For the following reasons, the Court grants Roberts's request for class certification.

1

**I.	Factual Background**

Roberts alleges Shadowsoft acquired a large database from the Department of Revenue by falsely representing that the information in the database was to be used to verify the identity of individuals doing business with Shadowsoft. This database contained personal information about Roberts and putative class members including their Social Security numbers. Shadowsoft then allegedly transferred the database to PublicData, who made the information contained in the database, including the Social Security numbers, available for sale at its website, www.publicdata.com. Roberts alleges the Department of Revenue "knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in the disseminating of" the information in the database to Shadowsoft and PublicData without Roberts's or the putative class members' express consent. (Compl. ¶ 26).

Roberts claims these sales violated the putative class members' statutory privacy rights created in the DPPA. The DPPA prohibits the knowing disclosure of "highly restricted personal information," defined to include Social Security numbers, without the express consent of the person to whom the information pertains. 18 U.S.C. § 2721(a)(2).

Roberts also claims Shadowsoft and PublicData's receipt and disclosure of the putative class members' personal information online violated the DPPA because Section 2722 of the Act prohibits procuring personal information from a motor vehicle report for an unlawful purpose including making false representations to obtain personal information from motor vehicle reports. 18 U.S.C. § 2722.

## II.     Discussion

Roberts's proposed class definition must satisfy the requirements of Fed. R. Civ. P. 23 to be certified as a class action. The proposed class must meet all the criteria set out in Rule 23(a), commonly referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. If the defined class meets all four of these requirements, then the action must fit under at least one of the three subsections of Rule 23(b). *See, e.g., In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). Roberts bears the burden of demonstrating that the proposed class meets these Rule 23 requirements. *See, e.g., Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

In considering whether class certification is appropriate, the Court does not address the merits of the parties' claims and defenses, but does probe behind the pleadings and look to what the parties must prove. *General Tel. Co. v. Falcon*, 457 U.S. 147, 160-61 (1982); *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006). "In conducting this preliminary inquiry, however, the Court must look only so far as to determine whether, given the factual setting of the case, if the plaintiff[']s general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).

Roberts requests the Court define the class as:

All licensed drivers in the state of Missouri whose highly restricted personal information from their motor vehicle record, as defined by 18 U.S.C. § 2725, was obtained, disclosed, or used by the Defendants, or any agent, officer, employee, or contractor, thereof from July 21, 2003 to present. Excluded from the Class are (1) any

3

individual defendant; (2) any member of the immediate family of any individual defendant; (3) any officer, agent, or employee of the defendants or family members thereof; (4) any of the undersigned attorneys or any member of the undersigned attorneys' immediate families; (5) the Court presiding over this case; and (6) any personnel of the Court presiding over this case.

**A.     Rule 23(a)**

**1.     Numerosity**

To determine if the class meets the numerosity requirement, the Court should examine the number of persons in a proposed class, the nature of the action, the size of the individual claims and the inconvenience of trying individual claims, as well as other factors. *See Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982). "[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Bradford v. Union Pac. R.R. Co.*, No. 05-CV-4075, 2007 WL 2893650, at *4 (W.D. Ark. Sept. 28, 2007) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)).

Roberts admits that the precise number of class members is not yet known, but she estimates that at least 300,000 Social Security numbers were in the database when it was sold to Shadowsoft. Because the DPPA defines private information to include Social Security numbers, Roberts asserts the class is at least this large.

Defendants do not dispute the number of potential class members, but instead focus on the "obtained, disclosed or used" language of the proposed class definition, arguing that the class is unascertainable until all the issues are decided and, thus, requires this Court to

4

make a prohibited merit determination.

Defendants cite to *Barker v. IUOE, Local 150*, 2009 WL 1956203, (N.D. Ill. July 9, 2009), for the proposition the class definition cannot meet the numerosity requirement if the definition presumes every disclosure is a violation. In *Barker* the plaintiffs moved to certify a class of all persons whose motor vehicle records were obtained by defendant. The court denied class certification stating that "simply obtaining [. . . ] the motor vehicle records is not equivalent to obtaining the personal information contained therein." *Id.*

*Barker* is not persuasive in this case. The *Barker* court based their determination on the plain language of 18 U.S.C. § 2724 (providing a civil remedy against individuals or entities who knowingly use, obtain or disclose personal information from a motor vehicle record). Here, in contrast, Roberts's action against the Department of Revenue is based on 18 U.S.C. § 2721, which prohibits the mere release of information from state maintained records. Furthermore, Roberts has limited the class definition to include only those individuals whose personal information (not just their motor vehicle record) was improperly obtained. The Court determines this limitation within the class definition is sufficient to limit the class to only those citizens who would have an individual cause of action under the DPPA.

Because Defendants admit that the entire database of Missouri drivers license information was sold to Defendant Shadowsoft, and that this potentially contained at least 300,000 Social Security numbers, the Court determines Roberts has demonstrated sufficient

5

numerosity to merit class certification. It would be impractical to join these individuals in one proceeding and, therefore, a class action is the preferred method to adjudicate their claims. *See* Fed. R. Civ. P. 23(a)(1).

### 2. Commonality

Fed. R. Civ. P. 23(a)(2) requires that there be questions of law or fact common to the class. The commonality requirement of Rule 23(a)(2) is satisfied when the legal question "linking the class members is substantially related to the resolution of the litigation." *Paxton*, 688 F.2d at 561. In determining commonality, "the appropriate focus is [on] the conduct of the defendant[s], not the plaintiffs." *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207-08 (W.D. Mo. 2006). The commonality requirement does not require commonality on every single question raised by a class action; it only requires commonality on the legal question that substantially links the class members. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).

Roberts identifies several common issues of law and fact, including: whether Defendants' actions violated the DPPA; whether Defendants should be enjoined from violating the DPPA in the future; and, the nature and extent of class members' damages as a result of Defendants' actions. Based on these common questions of law and fact concerning Defendants' conduct, Roberts has satisfied Rule 23(a)(2). *See In re GenesisIntermedia, Inc. Sec. Litig.*, 232 F.R.D. 321, 328 (D. Minn. 2005) ("Because commonality requires only one common question of law or fact, courts often find the

requirement to be satisfied.").

### 3. Typicality

The third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality means that there are "other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977). The typicality "requirement is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal procedure or remedial theory." *Paxton*, 688 F.2d at 562-63.

Defendants argue Roberts has yet to demonstrate that her claims are similar to others in the class. The Court disagrees. Roberts has shown that her claims emanate from the same legal theory or offense as the claims of the class; namely, that the Department of Revenue sold the Missouri driver's license information to Shadowsoft who then sold the information to PublicData and that all defendants acted unlawfully when they took this action. Because Roberts has the same grievance as all other potential class members, her grievance and the remedies provided for it are typical.

### 4. Adequacy

The final requirement of Rule 23(a) is that the named class representatives "will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The focus of the adequacy inquiry is whether "(1) the class representatives have common interests with

7

the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562-63.

### a. Roberts is Adequate as a Class Representative

Defendants allege Roberts is inadequate as a class representative because she only signed on as class representative after meeting with Plaintiffs' counsel and that she does not appropriately understand the suit or the role of a class representative.

In *Stanich v. Travelers Indem. Co.*, the district court determined that the class representative met Rule 23(a)(4)'s adequacy requirements even though the class representative had been solicited by class counsel. The court reasoned that since it was acceptable for class counsel to seek class members through advertisement, it was proper for class counsel to recruit class representatives as well. 2009 WL 185943, at *21 (Jan. 26, 2006 N.D. Ohio).

Similarly, here, it appears Roberts was recruited to serve as a class representative. The Court determines that the mere fact that Plaintiffs agreed to serve as representatives of the class after meeting with Plaintiffs' attorneys is not sufficient to deny class certification. Defendants' concerns regarding Roberts's knowledge of the suit are similarly misplaced. Class representatives need not have a special understanding of the factual or legal issues in their cases. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-74 (1966) (disproving of attacks to class representatives' adequacy based on ignorance) (cited in *Baffa v. Donaldson, Lufkin &*

8

*Jenrette Sec. Corp.*, 222 F.3d 52, 62 (2d Cir. 2000) (finding that a minimally knowledgeable class representative could proceed with a class action)).

Defendants also argue Roberts is inadequate as a class representative because she cannot bear the costs of litigation. The Court determines this is an improper reason to deny class certification because courts usually do not examine the ability of class representatives to bear the cost of litigation. *See Sanderson v. Winner*, 507 F.2d 477, 479-480 (10th Cir. 1974) (per curium), *cert denied*, 421 U.S. 914 (1975) ("We generally eschew the question whether litigants are rich or poor.").

Roberts shares the class interest in procuring relief to address the alleged violation of the putative class's privacy rights. There is no indication that her interest in procuring her relief will be at the expense of other class members or will, in any other way, be antagonistic to the class interests. Finally, Roberts has demonstrated a willingness to prosecute the interests of the class through qualified counsel. Roberts has already actively participated by answering discovery, submitting to a deposition, and reviewing the complaint. Roberts will, therefore, fairly and adequately represent the class.

### b. Class Counsel is Adequate

Finally, Defendants argue class counsel is not adequate and, therefore, Roberts's motion fails to meet the adequacy requirement. Defendants allege that Roberts has not yet provided sufficient information regarding counsel's adequacy under Rule 23(g) and Defendants question counsel's motives in this suit, stating that class counsel has filed several

9

other lawsuits alleging violations of the DPPA on behalf of the same class. Roberts replies that class counsel is adequate because they have been appointed as class counsel in other suits and have done extensive work in this suit.

When appointing class counsel under Rule 23(g), the Court must consider several factors including: the work counsel has completed in the action; counsel's experiences; counsel's knowledge of the applicable law and the resources counsel will commit to the representation. Fed. R. Civ. P. 23(g)(1)(C)(i). The Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(C)(ii).

Defendants have not convinced the Court class counsel is inadequate. "In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action." *White v. Martin*, No., 2002 WL 32596017, at *10 (W.D. Mo. Oct.3, 2002) (quoting *Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349, 357 (E.D. Mo. 1996)). The fact that class counsel have represented other persons in similar circumstances indicates that they have experience and have been approved by other courts. The Court will continue to monitor the situation to ensure that the class is adequately represented.

### B. Rule 23(b)

In addition to meeting the requirements of Rule 23(a), a case must also meet the requirements of one of the subdivisions of Rule 23(b) in order to proceed as a class action.

Certification under (b)(1) or (b)(2) is inappropriate,[1] therefore, the Court will only consider certification under (b)(3).

Rule 23(b)(3) provides that a class should be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts commonly refer to these two requirements as "predominance" and "superiority." *See Pichler v. UNITE*, 228 F.R.D. 230 (E.D. Pa. 2005).

### 1. Predominance

The predominance requirement of Fed. R. Civ. P. 23(b)(3) "trains on the legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). This requirement is similar to Rule 23(a)(3)'s typicality requirement. *Id*. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*.

Roberts argues that certification under (b)(3) is warranted because facts and legal issues are common to all class members. Defendants respond that the individual questions regarding the damages to be awarded negate the cohesiveness of the class claim but present

---

[1] It is not appropriate to certify the class under Fed. R. Civ. P. 23(b)(1) because Roberts has failed to meet the burden of establishing why class action certification is needed to either protect class members or Defendants' interests. Likewise, certification under 23(b)(2) is not proper because the proposed class is primarily seeking monetary damages.

11

no evidence of any individualized damage inquiries that may destroy predominance.

The Court determines the proposed class is sufficiently cohesive to warrant certification. "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." Newberg on Class Actions, § 4.25. The Supreme Court has also recognized that even tort cases "arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement." *Amchem Prods.*, 521 U.S. at 625. Here, similarly, Roberts's claim arises from a single occurrence.

Any difference in damages would be minimal. The DPPA caps actual damages at $2,500 for each individual; therefore, the amount of inquiry into the appropriate damages to award the class is not so great as to destroy the cohesiveness of their claims.

### 2. Superiority

Defendants argue that allowing these claims to be prosecuted individually is the superior method of adjudication. They assert that the cost of individual claims do not exceed the value of recoveries because attorneys fees can be awarded under the statute. They also argue that allowing the class to be certified will subject Defendants to such high damages that certification will violate due process.

Defendants' due process concerns are not a sufficient reason to deny class certification. The Eighth Circuit has not addressed this issue, however, the Seventh Circuit, in a similar case, held constitutional concerns regarding due process violations are best

12

applied after the class has been certified. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006). The Circuit Court reasoned that after judgment, if the court determines the award is too excessive for the harm caused, the court can reduce the award. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 427 (2003). In *Murphy*, defendant argued the class should not be certified because of due process concerns. The case was brought under the Fair Credit Reporting Act which, like the DPPA, provides statutory penalties for individuals whose rights under the act are violated. The *Murphy* class consisted of 1.2 million plaintiffs who sought damages of between $100 to $1,000 each. The Court reasoned that if Congress did not intend for such large class action awards for technical violations of the FCRA, it could have imposed a limitation on the possible damage in class actions brought under the FCRA. *See, e.g.* Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(2)(B)(ii) (total recovery may not exceed "the lesser of $500,000 or 1 per centum of the net worth of the debt collector"); *see also* Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(B).

Though the Eighth Circuit has not determined if a potentially large class action award would violate due process, the Eighth Circuit has held it is possible that refusing to certify the class could also raise due process concerns. *See In re Federal Skywalk Cases*, 680 F.2d 1175, 1188 (8th Cir. 1982) (upholding class certification under 23(b)(1) where individual claims could violate due process by resulting in "unlimited multiple punishment for the same act").

13

A class action is superior to other available methods. Given the large number of potential plaintiffs and the commonality of their claims, certifying the class will allow a more efficient adjudication of the controversy than individual adjudications would. If all plaintiffs filed separate suits, there would be thousands of individual actions each relying on the identical conduct of Defendants; therefore, a class action would more effectively utilize judicial resources.

### C. Rule 23(c)

Since certification of the class is appropriate, the Court must resolve the parties' disagreement regarding the appropriate class scope. *See* Fed. R. Civ. P. 23(c)(1)(B). Defendants essentially argue that the class definition is too broad, and should be limited by the applicable statutes of limitation. The DPPA provides no statute of limitation for actions brought under its provisions; civil actions arising under federal law, however, must be brought within four years of the action giving rise to the suit. *See* 28 U.S.C. § 1658(a). Since it would be improper for plaintiffs in an individual suit to recover damages for actions occurring prior to the statute of limitations, the Court determines it would also be improper for the class definition to contain class members whose suits may be barred by the statute of limitation. The Court amends the class definition to reflect these concerns:

> All licensed drivers in the state of Missouri whose highly restricted personal information from their motor vehicle record, as defined by 18 U.S.C. § 2725, was obtained, disclosed, or used by the Defendants, or any agent, officer, employee or contractor, therefor from July 21, 2004 to present in violation of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721, *et. seq.* Excluded from the Class are (1) any individual defendant; (2) any member of the immediate family of any individual

14

defendant; (3) any officer, agent, or employee of the defendants or family members thereof; (4) any of the undersigned attorneys or any member of the undersigned attorneys' immediate families; (5) the Court presiding over this case; and (6) any personnel of the Court presiding over this case.

## III. Conclusion

Accordingly, it is hereby ORDERED Roberts's Motion for Class Certification [Doc. # 129] is GRANTED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: November 17, 2009  
Jefferson City, Missouri

15